Argued June 7, reversed and remanded July 9, rehearing denied October 15, 1918.

## WALLACE *v.* OREGON ENGINEERING CO.

### (174 Pac. 156; 175 Pac. 445.)

Contracts—Construction—Incorporation by Reference.

1.   A reference in a subcontract to the general contract for a particular purpose makes it a part of the subcontract only for the specified purpose.

Contracts—Construction—Incorporation by Reference.

2.   An agreement that contractor shall not sublet the work without the written consent of the original contractee is for the benefit of, and may be waived by, the latter.

Contracts—Conditions Against Subletting—Effect.

3.   A contractor may make a valid contract to sublet the work, although in violation of the provision of the original contract prohibiting subletting without the written consent of original contractee, after which the securing of consent is the duty of contractor and not of subcontractor.

Contracts—Written Contracts—Presumption.

4.   It is presumed that all the terms of a written contract are embraced therein, and, where there is no provision that subcontractor should obtain the consent of original contractee to the subletting, none will be presumed.

Contracts—Construction—Settlement of Disputes.

5.   A provision in a general contract that the engineer shall settle disputes *held* not to authorize the engineer to decide the validity of a

contract between contractor and subcontractor, nor oust the jurisdiction of the courts in actions for breach thereof.

[As to conclusiveness of decision of architect or engineer under working contract, see note in **Ann. Cas.** 1913A, 180.]

### ON MOTION FOR REHEARING.

**Appeal and Error—Disposition—Rendition of Judgment.**

6. Where judgment of nonsuit is reversed, notwithstanding it appears on the face of the record that plaintiff is entitled to recover a specific amount, the case will be remanded for new trial where under the issues defendant might tender evidence to contradict the *prima facie* case.

From Clackamas: JAMES U. CAMPBELL, Judge.

Department 2.

This is an action for damages for the breach of a contract. The cause was tried before a jury. At the close of the evidence, the court granted defendant's motion for nonsuit. Plaintiff appeals.

In 1915, the Oregon Engineering and Construction Company entered into a contract with the South Fork Water Commission of Oregon City, Oregon, by which contract the Oregon Engineering and Construction Company agreed with the water commission to construct a water system for the City of Oregon City for approximately $119,293. The contract was in printed form and embraced the stipulations and agreements and also proposals, plans and specifications. On the 8th of April, 1915, the Oregon Engineering and Construction Company, desiring to sublet portions of the work to be done under the contract, entered into an agreement with plaintiff Guy L. Wallace wherein Wallace agreed to lay, lead, calk and test all of the pipe for the water supply of Oregon City, at the price of ten cents per lineal foot. There were approximately 131,250 feet. The contract between the defendant and the South Fork Water Commission contained the following clause:

"The contractor shall not assign or transfer his contract, or sublet any part of the work embraced in these specifications, without the written consent of the South Fork Water Commission, and the sureties on the contractor's bond."

The contract between the Oregon Engineering and Construction Company and the plaintiff contained the following clause:

"It is understood and agreed that the party of the first part shall swab all joints, retouch all abrasions to pipe caused by laying same to the satisfaction of the Engineer in charge; and that all work shall be done in accordance with the plans and specifications as outlined in the contract between the party of the second part and the South Fork Water Commission of the City of Oregon City, Oregon, which contract is hereby referred to and made a part of this agreement so far as appertaining hereto."

The plaintiff furnished defendant with the usual bond with surety for the performance of his contract. Thereafter Wallace entered into an agreement in writing with the Phelan Construction Company to perform all of the work in laying the pipe in accordance with the original contract at the rate of 6 cents per lineal foot, and furnished bond in the sum of five thousand ($5,000) dollars, guaranteeing the faithful performance of the contract. The work was to be done in a manner satisfactory to the engineer in charge, the general contractor and to plaintiff Wallace. The Phelan Construction Company, pursuant to the contract, made all necessary arrangements to perform the work. Afterward, plaintiff Wallace was informed by the Oregon Engineering and Construction Company that he would not be permitted to do the work; that he had no binding contract therefor, for the reason that his sub-

90 Or.—3

contract had not been assented to in writing by the South Fork Water Commission of Oregon City, Oregon. The plaintiff testified upon the trial that he had no knowledge of the clause in the original contract to the effect that the South Fork Water Commission should consent to the making of a subcontract for the work, and that he knew nothing about the same until May 13th of that year, after he had made the contract with the Phelan Construction Company to perform the work.

James J. Cayo, a member of the firm of the Phelan Construction Company, testified that immediately after making the contract to perform the work for Wallace, they got tools, furnaces, hammers, lanterns and arranged for testing-pumps; that they had the calking tools; that he had a talk with Mr. Moffatt, president of the Oregon Engineering and Construction Company, in which Mr. Moffatt said:

"I have let the contract to Moore and Wallace," but, he said, "I don't like this man Moore; I believe he is crooked. I like Wallace pretty well," and "I am going to try to break the contract; in fact I am going to break it. It may cost me three, four or probably five hundred dollars to break it, but I will break it and then give you (Cayo) the contract direct from us and pay you more money."

In talking with the plaintiff Wallace in regard to the matter, Mr. Moffatt said in effect, that Wallace had to guarantee the pipe, which was to be furnished by the original contractors for the work; that the engineer in charge of the work would insist that Copenhagen Brothers, who were to deliver the pipe, should have the laying of the upper five miles as on account of the topography of the country they would have to lay the pipe in the trench anyway.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Thomas Mannix* and *Mr. Grant B. Dimick,* with an oral argument by *Mr. Mannix.*

For respondent there was a brief over the names of *Mr. J. Dean Butler* and *Mr. Joseph E. Hedges,* with an oral argument by *Mr. Butler.*

BEAN, J.—1. It is assigned that the trial court erred in holding that the subcontract between Wallace and the Oregon Engineering and Construction Company did not go into effect on the day it was executed, by reason of the clause in the original contract providing that no part of the work should be sublet, and that Wallace could not sublet the work to the Phelan Construction Company without the consent of the South Fork Water Commission.

The plaintiff Wallace was bound only by the terms of his subcontract. He was not bound by the terms of the original contract except in so far as the original contract was incorporated into the subcontract. From that part of the subcontract above quoted, it appears that the original contract was referred to on account of the plans and specifications, for the purpose of providing the manner in which the work should be done.

A reference in a subcontract to the general contract for a particular purpose makes it a part of the subcontract only for the purpose specified. Therefore, the other terms and conditions of the original contract, between the contractor and the owner, do not affect the subcontract: *Guerini Stone Co.* v. *P. J. Carlin Construction Co.,* 240 U. S. 264 (60 L. Ed. 636, 36 Sup. Ct. Rep. 300); *Myers* v. *Joseph A. Strowbridge Estate Co.,* 82 Or. 29 (160 Pac. 135); 9 C. J., p. 710.

2-4. A provision in the original contract like the one in the present case, that the contractor shall not sublet the work without the written consent of the original contractee, is for the benefit of the latter and may be waived by him: 9 C. J., p. 910. The inhibition in the original contract between the South Fork Water Commission and the Oregon Engineering and Construction Company against assigning or subletting the work was personal to the latter. As between plaintiff Wallace, and the Oregon Engineering and Construction Company, the latter had a perfect right to sublet the work to plaintiff. Although this was a breach of the original contract between the Oregon Engineering and Construction Company and the South Fork Water Commission, the latter was not compelled to insist upon the inhibition, and might waive the same, and it in no way affected the right of the plaintiff to enter into a subcontract with the defendant. It was incumbent upon the Oregon Engineering and Construction Company to obtain the necessary consent to sublet the work, and make their contract good. This was not the duty of the plaintiff: *Lloyd* v. *Crispe*, 5 Taunt. 249 (128 Eng. Reprint, 685); *Canham* v. *Barry*, 15 C. B. 597 (139 Eng. Reprint, 558); *Robinson* v. *Harman*, 2 Keener's Selections on Contracts, p. 1121; *Burck* v. *Taylor*, 152 U. S. 634 (38 L. Ed. 578, 14 Sup. Ct. Rep. 696). It does not seem that defendant made any endeavor to obtain the consent of the South Fork Water Commission, but rather sought an excuse for avoiding its contract with plaintiff.

If A should employ B to cut 100 cords of wood upon a certain quarter-section of land at a certain price, which B agreed in writing to do, if it should transpire that A did not own the land or wood, and had no right

to cut the same, those facts would not relieve him from the obligation with B. So in the present case, whether under the original contract the Oregon Engineering and Construction Company had a right to sublet the work or not, the making of the subcontract with the plaintiff Wallace rendered the Oregon Engineering and Construction Company liable. The parties to this case put their contract in writing. It is presumed that all of the terms of the contract are embraced therein; that the extent and the manner of their undertaking are delineated by the written memorandum. All oral negotiations or stipulations between the parties preceding or accompanying the execution of the written instrument are regarded as merged therein: *Tallmadge* v. *Hooper,* 37 Or. 503, 512 (61 Pac. 349, 1127). If the defendant had desired that the efficacy of its contract with the plaintiff should depend upon obtaining the consent of the South Fork Water Commission thereto, it should have so stipulated in the contract.

It does not, however, appear from the evidence that there was any real objection upon the part of the Water Commission to the work being performed by plaintiff Wallace and Phelan Construction Company with whom he had made satisfactory arrangements. The evidence stands uncontradicted to the effect that the Oregon Engineering and Construction Company desired some excuse for not carrying out its contract with plaintiff, because he had made arrangements to have the work done at a profit of 4 cents per lineal foot of pipe.

5. The following paragraph is contained in the contract between the Water Commission and the defendant:

"In order to prevent disputes and litigation, the Engineer shall in all cases by the referee to determine the amount, quality, acceptability and fitness of the several kinds of work and material which are to be paid for under these specifications, and to decide upon all questions which may arise as to the fulfillment of said contract on the part of the contractor, and his decisions and determinations shall be final and conclusive."

It is contended by counsel for defendant that the engineer in charge of the work had authority to settle all disputes arising in regard to the fulfillment of the contract. This provision in the original contract pertains to questions that might arise in the execution of the work pursuant to the agreement. It does not give the engineer authority to decide whether or not the contract executed by plaintiff and defendant is a valid one, or oust the jurisdiction of the courts to try an action of damages for a breach of the contract. Such was not the purpose or intention of the stipulation in the original contract: *Lauman* v. *Young*, 31 Pa. St. 306. It was error to grant the motion for a nonsuit, and therefore the judgment of the lower court is reversed, and the cause will be remanded for such further proceedings as may be deemed proper, not inconsistent herewith.      REVERSED AND REMANDED.

McBRIDE, C. J., and MOORE and JOHNS, JJ., concur.

Rehearing denied October 15, 1918.

ON MOTION FOR REHEARING.

(175 Pac. 445.)

Department 2.

*Mr. Thomas Mannix* and *Mr. Grant B. Dimick,* for the petition.

*Mr. J. Dean Butler* and *Mr. Joseph E. Hedges, contra.*

PER CURIAM.—6. In the former opinion by Mr. Justice BEAN (174 Pac. 156), it was held to be error for the lower court to sustain defendant's motion for nonsuit (against the plaintiff) and the case was reversed and remanded for new trial. The appellant filed a petition for rehearing in which he contends that this court should render him a judgment against the respondent for the amount of his claim. It appears from the record that under his contract the plaintiff was to receive ten cents for each lineal foot of pipe; that he sublet the contract at six cents per lineal foot, or a profit of four cents for each foot of pipe. His cause of action is to recover the amount of the difference between his original contract and the subcontract. Such fact appears upon the face of the record and is undisputed.

Appellant's counsel has cited respectable authorities from other jurisdictions, sustaining his position, but with one or two exceptions, where a nonsuit has been granted by the lower court and the case has been reversed in this court, it has been the practice to remand the case for a new trial. It appears upon the

face of the record before this court that the appellant is now entitled to a judgment against the defendant for the difference between the original contract price and the price at which the contract was sublet, or four cents per lineal foot, yet under the issues made by the pleadings defendant might tender and produce at a second trial in the lower court testimony which might contradict the *prima facie* case made by plaintiff, and in the interests of justice and to give it such right, we are of the opinion that the case should be remanded.

OVERRULED.