**Blaine BARNARD, Plaintiff and Appellant,**

v.

**Ruth D. BARNARD and Paul D. Barnard, Defendants and Respondents.**

No. 19080.

Supreme Court of Utah.

May 14, 1985.

David R. Daines, Logan, for plaintiff and appellant.

David B. Havas, Ogden, for defendants and respondents.

HALL, Chief Justice:

Plaintiff Blaine Barnard (Blaine) brought this action to specifically enforce an oral land sales contract between himself and his mother, defendant Ruth D. Barnard (Ruth). The trial court refused to specifically enforce the agreement on the ground that the description of the land to be sold under the contract was too indefinite to permit specific enforcement. On appeal, plaintiff argues that the land was sufficiently indentified to permit specific enforcement and, alternatively, that Ruth is equitably estopped from asserting any deficiency in the description in defense of his action. We affirm.

In 1976, Ruth executed a warranty deed to a seven-acre parcel of land in favor of her son Paul D. Barnard (Paul). In September 1978, Ruth orally agreed to convey a two-acre portion of the same parcel to Blaine, reserving a life estate in herself. The agreement provided that the two-acre parcel be carved out of the northwest corner of the seven-acre parcel and bordered on the west by three designated lots. Blaine paid the agreed purchase price of $6,000 to Ruth at the time the agreement was reached.

In April 1979, Ruth and Blaine had a disagreement. Tendering a refund of the purchase price plus interest to Blaine, Ruth refused to convey the land to Blaine. On April 13, 1979, the warranty deed from Ruth to Paul was recorded. The trial court set aside the warranty deed as an invalid testamentary disposition. The portion of the judgment setting aside the warranty deed has not been appealed.

 Specific enforcement may be granted only if the parties' intent as to the essential terms of the agreement is clear.[1] If the property to be conveyed under a land sales contract is not described by the agreement with certainty, specific performance of the agreement may not be required.[2]

 While the agreement in the instant case describes the general location of the two-acre parcel to be conveyed, only a portion of the northern and western borders of the parcel can be ascertained with certainty from the description. The location of the eastern and southern boundaries was not defined and is left to speculation. Depending upon how far south the two-acre parcel extended along the western border, the eastern boundary of the parcel could be fixed in innumerable places. Conversely, depending on how far east along the northern border of Ruth's property the parcel extended, the southern border of the property would change. The specific boundaries of the property to be conveyed are too

1. *See Eliason v. Watts,* Utah, 615 P.2d 427, 429 (1980); *Tanner v. Baadsgaard,* Utah, 612 P.2d 345, 347 (1980); *Reed v. Alvey,* Utah, 610 P.2d 1374, 1377 (1980); *Pitcher v. Lauritzen,* 18 Utah 2d 368, 372, 423 P.2d 491, 493 (1967).

2. *See Davison v. Robbins,* 30 Utah 2d 338, 517 P.2d 1026 (1973); *Pitcher v. Lauritzen, supra* note 1.

speculative to permit specific enforcement of the agreement.

Plaintiff asserts that only the eastern boundary of the property was not specifically defined by the description and that an eastern boundary may be ascertained by measuring a two-acre parcel taking into account the three other borders. Although the trial court's findings specifically refer only to the uncertainty of the eastern border, it is clear from the findings that, contrary to plaintiff's assertion, both the southern and eastern borders are in doubt under the terms of the agreement. Plaintiff has challenged on appeal only the trial court's legal conclusion that the agreement was too indefinite to permit specific enforcement, not the factual findings underlying that conclusion; nor does there appear on the record any basis for a challenge of the factual findings.

While we have granted specific performance in cases where an ambiguous or uncertain description in a written contract could be made certain by extrinsic or parol evidence,[3] such cases are inapposite here, where there is no additional evidence from which a definite description may be ascertained.

Plaintiff relies on our decision in *Stauffer v. Call,*[4] in which the following description in a written land sales contract was held sufficiently definite to permit specific enforcement:

[Buyers agree] to purchase the following described real property, situate in the county of *Washington,* State of Utah, to-wit: *Anderson's Junction.* More particularly described as follows: SEE enclosed legal description. [Buyers] to purchase two houses using the natural bounderies [sic], which is approximately 10 acres collectively PLUS approsmately [sic] ⅕ water rights. [Seller] to retain the fenced natural farm ground on the

SE (south side from Interstate Freeway) which is approximately 40 acres PLUS ⅖ water rights. The remaining ground SE of the old highway to be [buyers'] along with the two houses. [Buyers] to purchase ½ of all remaining property to be owned as tenents [sic] in common with [seller].[5]

The referenced description was of the property out of which the buyers' property was to be carved. In *Stauffer,* we rejected the seller's argument that the contract was only a preliminary statement of understanding. We ordered the trial court to decide on a legal description based on the contract description, the natural boundaries, including stone walls and wire fences, and other extrinsic or parol evidence. Implicit in our decision was a determination that the description contained in the parties' written agreement could be made certain in light of the extrinsic facts. In the instant case, unlike *Stauffer,* there simply was no agreement on a definite property description.

Finally, plaintiff contends Ruth is equitably estopped from asserting in her defense any ambiguity in the description of the property to be conveyed because she accepted full payment of the purchase price, failed to inform Blaine of the warranty deed to Paul, and allowed Blaine to believe he had a binding contract to buy the land. The description of the land to be conveyed under the parol agreement, however, was equally within the knowledge of both Blaine and Ruth. There is nothing on the record even implying that Ruth knew the contract was unenforceable because of a deficiency in the description of the land.

 Equitable estoppel may be invoked to prevent injustice where one has reasonably relied to his or her detriment on an intentional or negligent false representation by another.[6] Plaintiff has failed to

---

3. *See, e.g., Hackford v. Snow,* Utah, 657 P.2d 1271 (1982); *Reed v. Alvey, supra* note 1; *Jacobson v. Cox,* 115 Utah 102, 202 P.2d 714 (1949).

4. Utah, 589 P.2d 1219 (1979).

5. *Id.* at 1220.

6. *See United Am. Life Ins. Co. v. Zions First Nat'l Bank,* Utah, 641 P.2d 158, 161 (1982); *Celebrity Club, Inc. v. Utah Liquor Control Comm'n,* Utah, 602 P.2d 689, 694 (1979); 31 C.J.S. *Estoppel* § 67 (1964).

establish even a prima facie basis for applying the doctrine of equitable estoppel here. Although Ruth may have intentionally or negligently concealed from Blaine the existence of her warranty deed to Paul, Blaine was not damaged thereby, since the deed was ultimately set aside. Further, since the property description in the oral agreement between Ruth and Blaine was equally within their knowledge, Blaine could not have relied on any misrepresentation by Ruth as to the land to be conveyed under the agreement. Moreover, nothing in the record implies that there was any such misrepresentation by Ruth. Thus, there is no basis for applying the doctrine of equitable estoppel in this case.

Affirmed.

STEWART, HOWE, DURHAM and ZIMMERMAN, J., concur.